**CLARKSON LAW FIRM, P.C.**
Tracey B. Cowan (SBN 250053)
*tcowan@clarksonlawfirm.com*
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050
Fax: (213) 788-4070

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfim.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Olivia E. Davis (SBN 353041)
*odavis@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.F., an individual; and G.H., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>COOPERSURGICAL, INC.; THE COOPER COMPANIES, INC.; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.4:24-cv-00643<br>**COMPLAINT**<br><br>1.  STRICT PRODUCTS LIABILITY—MANUFACTURING DEFECT<br><br>2.  STRICT PRODUCTS LIABILITY—DESIGN DEFECT<br><br>3.  STRICT PRODUCTS LIABILITY—FAILURE TO WARN<br><br>4.  NEGLIGENCE/GROSS NEGLIGENCE<br><br>5.  NEGLIGENT FAILURE TO RECALL<br><br>6.  UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

*Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com*

Plaintiffs E.F. and G.H. (collectively, "Plaintiffs") respectfully bring this Complaint against Defendants COOPERSURGICAL, INC. ("CooperSurgical") and THE COOPER COMPANIES, INC. ("The Cooper Companies"), and DOES 1-50 (hereinafter, collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.    Defendants' defective product and negligent conduct destroyed Plaintiffs' precious and irreplaceable developing embryos.

2.    Defendants manufactured, marketed, promoted, distributed, and/or sold media to be used for culturing and development of human embryos. Defendants marketed that their media provided "an optimized in vitro environment,"[1] which is necessary to ensure that fertilized human eggs can survive and develop into embryos viable for implantation.

3.    Defendants further represented that they properly and adequately tested their embryo culture media before making the media available to the public, including clinics and/or healthcare practitioners who would use such embryo culture media for the storage of human embryos. They further claimed: "Our world class ISO 13485 and ISO 9001 certified manufacturing site consistently maintains the highest standards for product quality and reliability."[2]

4.    Despite these representations, Defendants did not sufficiently test the embryo culture media that they manufactured, marketed, promoted, distributed, and/or sold. As a result, they sold defective lots of embryo culture media, which turned out to lack nutrients critical to embryonic development.

5.    Defendants' manufacturing, marketing, promoting, distributing, and/or selling their defective embryo culture media resulted in the death of Plaintiffs' developing embryos.

6.    Only after Plaintiffs' embryos died due to Defendants' defective embryo culture media did Defendants recall multiple lots of their embryo culture media, including a lot that ruined Plaintiffs' embryos.

---

[1] *Optimize Your Results*, COOPERSURGICAL, https://coopersurgicalfertility-jp.com/wp-content/uploads/Culture-Media-Brochure-V3-US_web.pdf, (last accessed Dec. 13, 2023).
[2] *Id.*

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

**PARTIES**

7.    **Plaintiff E.F.** is a citizen of Charlotte, North Carolina.

8.    **Plaintiff G.H.** is a citizen of Charlotte, North Carolina.

9.    Given the sensitive nature of their claims, Plaintiffs request this Court to grant a protective order pursuant to Federal Rule of Procedure 26(c) to permit them to proceed under pseudonym to ensure Defendants keep Plaintiffs' identity confidential throughout the pendency of the lawsuit thereafter. Plaintiffs intend to file a motion for a protective order, if requested by the Court or Defendants, to proceed under pseudonyms.

10.    **Defendant The Cooper Companies** is a global medical device corporation boasting worldwide revenues of $3.6 billion. It is a Delaware corporation with its principal place of business in Alameda County, California. At all relevant times herein, Defendant The Cooper Companies was and is authorized to conduct business within the State of California, and distributed its products, including the above-referenced embryo culture media, within the State of California.

11.    **Defendant CooperSurgical** is a wholly owned subsidiary of The Cooper Companies. CooperSurgical is a Delaware corporation, with its principal place of business in Trumbull, Connecticut. Defendant primarily manufactures medical devices for women's healthcare and fertility markets. At all relevant times herein, Defendant CooperSurgical was and is authorized to conduct business within the State of California, and distributed its products, including the above-referenced embryo culture media, within the State of California.

12.    Plaintiffs reserve the right, pursuant to Federal Rules of Civil Procedure 15, to seek leave to identify additional parties, whom Plaintiffs are currently unaware of, who are responsible for Plaintiffs' harm, as alleged herein.

13.    Plaintiffs are informed and believe, and on that basis allege, that at all times material hereto: Defendants were, actually or ostensibly, the agents, representatives, and/or employees of each and every other Defendant; Defendants were acting within the course and scope of said alternative personality, capacity, identity, agency, representation, and/or employment; Defendants were the trustees, partners, servants, joint venturers, shareholders, co-conspirators, contractors, and/or employees of each and every other Defendant; the acts and omissions alleged herein, while

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

committed individually, were made by Defendants through such capacity, and within the scope of their authority, and with the permission and consent of each and every other Defendant, as to make Defendants jointly and severally liable to Plaintiffs for the acts and omissions alleged herein.

## JURISDICTION AND VENUE

14.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the entire action by virtue of the fact that this is a civil action between citizens of the United States and citizens of a foreign state different states and wherein the matter in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over all Defendants. Each Defendant is, and at all relevant times herein was, a citizen of and/or authorized to conduct business in the State of California and/or conducted such business within the State of California, including the Northern District of California and including the actions, dealings, and/or omissions that caused or contributed to the harm giving rise to this action.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant The Cooper Companies' principal place of business is within this District and is a resident of this District pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL FACTURAL ALLEGATIONS

### General Background of Assisted Reproductive Technology

17.     Many people struggling with infertility opt to work with clinics specializing in ART. In broad terms, ART describes fertility-related treatments in which human eggs, embryos, and/or sperm are manipulated to produce a pregnancy or preserve a client's ability to produce a pregnancy later in life. The most common type of ART is in vitro fertilization ("IVF").

18.     During the IVF process, a fertility doctor surgically extracts eggs from a woman. Then, scientists called embryologists fertilize those eggs in a laboratory with sperm to create a viable embryo. The embryo can either be cryopreserved for later use or used right away by transplanting it into a woman's uterus to begin a pregnancy.

19.     Unlike sperm collection, the process of extracting human eggs is lengthy, invasive, and physically-taxing. It typically involves a woman giving herself or receiving one to several

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

injections of medication per day for weeks, frequent ultrasound monitoring and other tests to monitor egg development, and finally a surgery to collect the eggs. This is an expensive process that comes with many possible physical side effects, some of them serious and long-term.

20.     Following the collection of the eggs, sperm is mixed with the eggs in a laboratory to create embryos.

21.     Human eggs are a limited and precious resource. Every woman is born with a specific and limited number of eggs that does not increase but rather decreases over the course of her lifetime. In addition to the number decreasing, the egg quality also diminishes over time, with miscarriages and chromosomal abnormalities occurring more frequently for women who are older at the time of a natural conception and pregnancy. The most determinative factor in IVF success is the woman's age when her eggs were extracted. Specifically, eggs retrieved before a woman is thirty-five (35) years old are most likely to produce viable, healthy embryos.

22.     Thus, one purpose of embryo preservation and storage is to allow couples to preserve reproductive material so that the embryos may be implanted at a later time and allow for flexibility in family planning.

### The Importance of Embryo Culture Media in IVF

23.     Embryo culture media plays a pivotal role in the IVF embryology laboratory, serving as the essential substance in which an egg is immersed, typically in a petri dish, when it is fertilized and during its initial development in the lab. Culture media is composed of a salt solution with the addition of other components, such as carbohydrates (pyruvate, lactate, and glucose), amino acids, and magnesium.

24.     Magnesium is a critical ingredient of embryo culture media. Magnesium is an essential nutrient in embryonic and human fetal growth.[3] Studies have shown that deficient magnesium levels in culture media can cause embryo growth to arrest.[4]

25.     After egg retrieval, the embryologist fertilizes the eggs with sperm, and then the

---

[3] Yuko Komiya *et al.*, *Magnesium and Embryonic Development*, MAGENES RES. (2014) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4207262/#:~:text=More%20recent%20epidemiol ogical%20studies%20have,SGA)%20babies%20%5B7%5D.
[4] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

fertilized eggs are given five to seven days in the culture media to develop to the blastocyst stage.

26.     Embryologists closely monitor the cell development during this time period to determine if the embryos are developing as intended and in line with expected timelines. The count begins on "Day 0," or the day the eggs (or oocytes) were fertilized with sperm. On Day 1, the embryologists assess the eggs to see which have successfully fertilized and become embryos. Between Day 1 and Day 3, the embryos begin cell division in the "cleavage stage." By Day 4, the embryos typically enter the "morula stage," characterized by a compacted mass of cells. By Day 5, the embryo re-expands to the blastocyst stage, in which the embryo shows two distinct groups of cells: a distinct inner cell mass and an outer globe of cells. All embryo development is slightly different, and some embryos may develop later than others, but typically fertilized eggs that do not develop to blastocyst by the 6th day are not considered viable. The embryo culture media in a petri dish supports and protects the developing embryos in these critical early stages, just as a woman's body would do during natural conception.

27.     The resulting embryos can then either be cryo-preserved or transferred to the uterus where a baby can form.

### Defendants' Consolidation of the Fertility and Reproductive Health Device Markets

28.     The Cooper Companies and CooperSurgical have worked quickly to solidify their primacy in the lucrative fields of reproductive and fertility healthcare, acquiring competitors to secure their place. In April 2018, CooperSurgical acquired LifeGlobal, a leading global provider of in vitro fertilization devices—including IVF media—for $125 million dollars. [5] In January 2021, it acquired Embryo Options, a company that provided streamlined case management and billing options for fertility clients. [6] The following month, it acquired AEGEA Medical, a California-based

[5] *The Cooper Companies Acquires the LifeGlobal Group, Expanding Fertility Solutions Portfolio*, THE COOPER COMPANIES (April 18, 2023), https://www.coopersurgical.com/wp-content/uploads/The-Cooper-Companies-Acquires-The-LifeGlobal-Group-Expanding-Fertility-Solutions-Portfolio.pdf.

[6] Natalie Missakian, *Trumbull's CooperSurgical Acquires Illinois Firm*, HARTFORD BUSINESS (Jan. 6, 2021), https://www.hartfordbusiness.com/article/trumbulls-coopersurgical-acquires-illinois-firm.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

medical manufacturing company that creates devices used in reproductive medicine. [7] In March 2021, it acquired Safe Obstetric Systems, another company that manufactures reproductive medical devices, for $52 million dollars. [8]

29.     In November of the same year, CooperSurgical acquired Generate Life Sciences, a purveyor of donor sperm and eggs as well as other fertility services, for $1.6 billion. In February 2022, CooperSurgical acquired Cook Medical's reproductive health business for $875 million.[9] This company produces medical devices for fertility, obstetrics, gynecology, in vitro fertilization (IVF), and assisted reproductive technology (ART).[10]

30.     Following this significant consolidation of the fertility medical device industry, fertility clinicians have reported a decline in Defendants' customer service and product quality. In fact, on information and belief, the number of Defendants' publicly disclosed product recalls skyrocketed in 2023 as compared to the previous seven years.

### Defendants' Embryo Culture Media

31.     CooperSurgical and The Cooper Companies marketed and promoted their embryo culture media for use as the essential medium in which fertility clinics can fertilize eggs and create the embryos that would be the future children of fertility clients like E.F. and G.H.

32.     Defendants further marketed and represented that their embryo culture media is subject to rigorous testing to ensure it is the highest quality embryo culture media available.

33.     Specifically, CooperSurgical claims "[q]uality is our cornerstone," stating its "products undergo thorough quality testing before being released, to ensure consistent quality for

---

[7] *CooperSurgical Buys US Firm AEGEA Medical*, NS MEDICAL DEVICES (Feb. 3, 2023), https://www.nsmedicaldevices.com/news/coopersurgical-aegea-medical/.
[8] Natalie Missakian, *CooperSurgical Buys UK Medical Device Maker for $52M*, HARTFORD BUSINESS (March 3, 2021), https://www.hartfordbusiness.com/article/coopersurgical-buys-uk-medical-device-maker-for-52m.
[9] *CooperCompanies to Acquire Cook Medical's Reproductive Health Business*, COOPERCOMPANIES (Feb. 7, 2023), https://investor.coopercos.com/news-releases/news-release-details/coopercompanies-acquire-cookr-medicals-reproductive-health.
[10] *CooperCompanies to Acquire Cook Medical's Reproductive Health Business*, MEDICAL DEVICE NETWORK (Feb. 8, 2022), https://www.medicaldevice-network.com/news/coopercompanies-cook-medicals-reproductive-health/?cf-view.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

your piece of mind."[11]

34.     As Defendants knew or should have known, the inclusion of magnesium in the culture media is critical to embryo development. The lack of magnesium in culture media may result in the demise of the patient's embryos and increases cost to both the patient and the clinics.

35.     Despite this, on information and belief, Defendants failed to adequately monitor their manufacturing system and refill the magnesium hopper on the assembly line when it was empty. Defendant allowed for the continued production of embryo culture media without ensuring that this essential ingredient was included.

36.     Nonetheless, Defendants marketed that all their embryo culture media was properly formulated and tested, and thus that it could be relied upon that it contained the nutrients necessary for growing human embryos.

37.     Defendants manufactured, marketed, distributed, and/or sold their embryo culture media while promoting that their embryo culture media was tested by superior methods, e.g., a Mouse Embryo Assay, to ensure that the media was properly formulated.

38.     However, Defendants knew or should have known that their embryo culture media was not properly and/or adequately tested and/or inspected, and thus lacked an ingredient critical to the development of human embryos.

**<u>Plaintiffs' Embryos Were Destroyed By the Recalled Embryo Culture Lots</u>**

39.     Plaintiffs utilized ART to try to fulfill their dream of having biological children. To that end, Plaintiffs entrusted a fertility clinic to create their embryos in order to have a child.

40.     In November of 2023, Plaintiff E.F. underwent an egg-retrieval procedure that successfully yielded 35 eggs.

41.     From those eggs, 23 fertilized eggs were created using E.F.'s eggs and G.H.'s sperm.

42.     On day 3, Plaintiffs were delighted to hear that 8 of their embryos were developing ahead of schedule and 12 were developing right on track. Plaintiffs were incredibly excited that they would have a number of embryos reach blastocyst on day 5.

---

[11] *Quality and Certifications*, CᴏᴏᴘᴇʀSᴜʀɢɪᴄᴀʟ, https://www.coopersurgical.com/healthcare-providers/support-compliance/quality-certifications#qualityCerts (last accessed Dec. 13, 2023).

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

43.     Plaintiffs' excitement was short-lived. On day 5, they received a call from their clinic that *none* of their 23 fertilized embryos had made it to blastocyst.

44.     On day 6, Plaintiffs received a call that 3 of their embryos had developed to blastocyst. On day 7, 4 more made it to blastocyst. Plaintiffs decided to freeze all of the day 6 embryos and 1 of the day 7 embryos, although the chance of these embryos being usable was significantly less than a healthy, day 5 blastocyst would have been.

45.     Indeed, Plaintiff E.F. underwent a transfer procedure to transfer one of the frozen embryos, but the embryo did not successfully implant. Plaintiffs E.F. and G.H. were devastated.

46.     Plaintiffs' fertility doctor later told Plaintiffs that media from the Recalled Embryo Culture Lots was used and was almost certainly the cause of the destruction of Plaintiffs' precious embryos.

47.     As the result of Defendants' conduct, Plaintiff E.F. and G.H.'s ability to have children with their genetic material has been severely impacted. Further, Plaintiffs expended significant financial resources to undergo these fertility procedures, which were unsuccessful in yielding pregnancy, due to Defendants' actions.

### Defendants' Recall of Their Embryo Culture Media

48.     On or about December 5, 2023, Defendants issued a recall of several lots of their embryo culture media, including LGGG Lots 231020-018741, 231020-018742, and 231020-018743 (the "Recalled Embryo Culture Lots.")

49.     However, on information and belief, Defendants intentionally did not immediately disseminate notice of the Recalled Lots publicly or throughout the IVF community.

### CooperSurgical Knew or Should Have Known That the Recalled Embryo Embryo Culture Media Lots Posed an Unreasonable Risk to Developing Human Embryos

50.     On information and belief, Defendants previously have manufactured and sold numerous products used in ART, including media used in the IVF process, that were defective and

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

sometimes recalled.[12]

51.    On information and belief, Defendants did not properly monitor their assembly line manufacturing process, and as such, failed to properly refill the magnesium hopper when it was empty.

52.    On information and belief, Defendants continued to manufacture embryo culture media despite the empty magnesium hopper, and as a result, produced embryo culture media that lacked a nutrient critical for embryonic development.

53.    On information and belief, Defendants did not properly test the impacted lots of their Embryo Culture Media until after receiving formal complaints from numerous fertility clinicians— including those who worked on Plaintiffs' embryos—that developing embryos were dying due to their product.

54.    As a manufacturer and distributor of numerous ART products, including embryo culture media, CooperSurgical knew that defective embryo culture media could prevent human embryos from properly developing. Accordingly, Defendants knew it was vitally important that their embryo culture media was properly tested and/or inspected prior to the distribution of such embryo culture media.

55.    Despite this, Defendants failed to properly inspect and/or test their embryo culture media, including the recalled embryo culture media lots. Defendants knowingly put their embryo culture media into the market when they knew or should have known that the recalled embryo culture media lots posed a substantial and unacceptable risk to developing human embryos, including Plaintiffs' embryos.

56.    As a manufacturer of numerous products for use in ART, Defendants knew that people go to extraordinary lengths to obtain and use viable human embryos. Defendants also knew that people place extreme value on their viable embryos, make substantial emotional and financial investments for their embryos, and that such people expect that great care will be taken to preserve

---

[12] *See, e.g., Urgent: Media Field Safety Corrective Action - SAGE Vitrification Media Kit*, COOPERSURGICAL, (Feb. 27, 2023), available at:
https://www.igj.nl/binaries/igj/documenten/waarschuwingen/2023/02/27/coopersurgical-tbd-sage-vitrification-media-kit/IT2075448+CooperSurgical+tbd+Sage+Vitrification+Media+Kit+_v2.pdf.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

and protect the embryos to avoid the irreparable harm of the death of their embryos.

57.     Defendants' conduct was despicable and was carried out by Defendants with a willful and conscious disregard of the rights and/or safety of others. Defendants' conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights. Moreover, as discussed herein, Defendants' conduct amounted to a deceit and/or concealment of material fact(s) known to Defendants with the intention on the part of Defendants to deprive individuals of property and/or legal rights and/or otherwise cause injury.

### FIRST CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY—MANUFACTURING DEFECT

58.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

59.     At all times relevant herein, Defendants manufactured, distributed, and/or sold embryo culture media to be used with developing human embryos, including the Recalled Embryo Culture Media Lots.

60.     At the time the Recalled Embryo Culture Media Lots left Defendants' possession, the Recalled Embryo Culture Media Lots contained a manufacturing defect such that they differed from Defendants' intended result. This deviation included, but was not necessarily limited to, the lack of magnesium present in the Recalled Embryo Culture Media Lots, such that the Recalled Embryo Culture Media Lots posed a fatal harm to developing human embryos upon their use for the culture and development of said embryos.

61.     Embryo culture media from the Recalled Embryo Culture Media Lots was used (as intended), and it came into contact with Plaintiffs' developing embryos, which resulted in the tragic destruction of Plaintiffs' developing embryos.

62.     The defect in the embryo culture media in the Recalled Embryo Culture Media Lots was a substantial factor in causing Plaintiffs' harm.

63.     Defendants acted with a conscious disregard for the safety of consumers and/or users of its embryo culture media, including Plaintiffs, because, without limitation, Defendants were aware of the dangerous consequences of not properly or adequately testing their embryo culture

COMPLAINT AND DEMAND FOR JURY TRIAL

media (including specifically the Recalled Embryo Culture Media Lots), they knew or should have known the embryo culture media (specifically, the Recalled Embryo Culture Media Lots) lacked vital nutrients such that it posted a severe risk to irreplaceable developing human embryos, and failed to recall the Recalled Embryo Culture Media Lots before the embryo culture media was used to culture and develop Plaintiffs' embryos.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY—DESIGN DEFECT

64.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

65.    Defendants designed, manufactured, distributed, and/or sold embryo culture media, including the Recalled Embryo Culture Media Lots, or caused such embryo culture media to be designed, manufactured, and/or sold.

66.    The Recalled Embryo Culture Media Lots did not perform as effectively as an ordinary consumer would have expected it to perform when used or misused in a reasonably foreseeable manner.

67.    Defendants had actual or constructive notice and knew, or in the exercise of reasonable care and diligence should have known, that the Recalled Embryo Culture Media Lots were defective in their design as discussed herein, including but not limited to their composite materials, resulting in the irreversible damage and destruction of Plaintiffs' developing embryos.

68.    The benefits of the Recalled Embryo Culture Media Lots are not outweighed by their risks, particularly considering the potential harm resulting from their use on reproductive materials, including embryos; the likelihood of harm occurring; the feasibility of an alternative safer design at the time of manufacture; and the feasibility of more reliable testing methods and procedures.

69.    Defendants had actual or constructive notice and knew, or in the exercise of reasonable care should have known, that the Recalled Embryo Culture Media Lots had significant risks, were defective in design, as discussed herein, and had an unreasonable increased risk of damage or destruction to stored reproductive materials, including embryos.

70.    Plaintiffs were irreparably harmed because the Recalled Embryo Culture Media Lots

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050   F: (213) 788-4070  |  clarksonlawfirm.com

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

lacked an essential ingredient, magnesium, that was necessary to develop human embryos, such as those belonging to Plaintiffs.

71.    As a direct and proximate result of the defective designs of the Recalled Embryo Culture Media Lots, Plaintiffs were harmed as described herein, including but not limited to the destruction of their embryos.

72.    The failure of the Recalled Embryo Culture Media Lots to perform safely and effectively was a substantial factor in causing Plaintiffs' harm and damages.

73.    Defendants acted with a conscious disregard for the safety of consumers and/or users of their embryo culture media, including Plaintiffs, because, without limitation, Defendants were aware of the dangerous consequences of not properly or adequately testing their embryo culture media (including specifically the Recalled Embryo Culture Media Lots), when it knew or should have known the embryo culture media (specifically, the Recalled Embryo Culture Media Lots) lacked vital nutrients such that it posted a severe risk to irreplaceable developing human embryos, and failed to recall the Recalled Embryo Culture Media Lots before the embryo culture media was used to culture and develop Plaintiffs' embryos.

### THIRD CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY—FAILURE TO WARN

74.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

75.    Defendants designed, manufactured, distributed, and/or sold embryo culture media to be used with human embryos, including the Recalled Embryo Culture Media Lots, and/or caused such embryo culture media to be designed, manufactured, distributed, and/or sold.

76.    The Recalled Embryo Culture Media Lots had risks, including but not limited to defective formulation—namely the lack of magnesium, that were known and/or knowable in light of the generally accepted scientific knowledge at the time of manufacture, distribution and/or sale.

77.    The risks of defective embryo culture media, including the Recalled Embryo Culture Media Lots, presented a substantial danger, including but not limited to the destruction of viable embryos, when such embryo culture media was used as intended and/or in a reasonably foreseeable

manner.

78.     Despite their awareness that its embryo culture media, including the Recalled Embryo Culture Media Lots, was defective and lacked essential nutrients to embryonic development, Defendants failed to warn consumers, including but not limited to Plaintiffs and Plaintiffs' fertility providers who purchased the embryo culture media, that the embryo culture media had not been properly and/or sufficiently tested, and/or lacked ingredients essential to embryonic growth.

79.     Neither Plaintiffs nor their fertility providers knew or would have known or recognized the risks of the Recalled Embryo Culture Media Lots.

80.     As a direct and proximate result of Defendants' failure to adequately warn of the dangerous effects of the Recalled Embryo Culture Media Lots, Plaintiffs were harmed as described herein, including but not limited to the destruction of their embryos.

81.     The lack of sufficient warnings was a substantial factor in causing Plaintiffs' harm and damages. Defective and harmful embryo culture media would not have been used with Plaintiffs' developing embryos if Defendants had provided sufficient warning in advance.

82.     Defendants acted with a conscious disregard for the safety of consumers and/or users of their embryo culture media, including Plaintiffs, because, without limitation, Defendants were aware of the dangerous consequences of not properly or adequately testing their embryo culture media (including specifically the Recalled Embryo Culture Media Lots), when they knew or should have known the embryo culture media (specifically, the Recalled Embryo Culture Media Lots) lacked vital nutrients such that it posted a severe risk to irreplaceable developing human embryos, and failed to recall the Recalled Embryo Culture Media Lots before the embryo culture media was used to culture and develop Plaintiffs' embryos.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE / GROSS NEGLIGENCE

83.     Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

84.     Defendants designed, manufactured, distributed, and/or sold embryo culture media for use with human embryos, including the Recalled Embryo Culture Media Lots, or caused such

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

embryo culture media to be designed, manufactured, and/or sold.

85.     As manufacturers of embryo culture media for use with human embryos, Defendants owed a duty, including but not limited to Plaintiffs, to design, manufacture, inspect, and/or test their embryo culture media, including the Recalled Embryo Culture Media Lots, such that their embryo culture media was not defective when used with developing human embryos and/or was properly formulated to contain the ingredients necessary for embryonic development.

86.     Defendants owed Plaintiffs a duty to exercise the highest level of care in manufacturing, producing, inspecting, monitoring, and testing of their embryo culture media, including the Recalled Embryo Culture Media Lots, used for its intended purpose in IVF, ART, and/or embryology across the United States. Defendants owed Plaintiffs the highest degree of utmost care when maintaining, caring for, and otherwise protecting Plaintiffs' developing embryos.

87.     Defendants owed a duty of care to Plaintiffs to act reasonably in the creation of embryo culture materials and to avoid destroying embryos or jeopardizing the viability of Plaintiffs' developing embryos, as a result of the special relationship between Plaintiffs and Defendants arising from the extremely sensitive services Defendants decided to perform: protect and preserve human embryos during the IVF process through the creation of embryo culture media.

88.     Defendants created this duty of care through their production of IVF embryo culture media, by marketing it as safe embryo culture media, and through Defendants' presence in the sensitive IVF and ART market and services that Defendants voluntarily undertook.

89.     Imposing this duty on Defendants to avoid causing such emotional distress and financial harm is beneficial to public policy of preventing future harm in that Defendants will be motivated to ensure the safety of their IVF embryo culture media.

90.     Defendants breached this duty and were negligent in the design, manufacture, inspection, and/or testing of their embryo culture media, including the Recalled Embryo Culture Media Lots, and thus produced an unsafe, dangerous, and defective embryo culture media that guaranteed the failure of embryotic viability during the IVF process. Specifically, Defendants breached this duty by failing to safely produce and further ensure the safety of their defective

embryo culture media. Additionally, Defendants breached their duty by failing to timely recall the Recalled Embryo Culture Media Lots.

91.    As a direct and proximate result of Defendants' negligent acts and/or omissions, including but not limited to, failing to properly or adequately test their embryo culture media (including the Recalled Embryo Culture Media Lots), promoting and marketing their embryo culture media as properly tested and safe for use on human embryos despite their knowledge of its defective nature, defectively designing their embryo culture media, defectively manufacturing their embryo culture media, and/or failing to adequately warn of the dangerous effects of the Recalled Embryo Culture Media Lots, Plaintiffs were harmed as described herein, including but not limited to the destruction of their developing embryos. Additionally, Defendants' breach caused damages in that Plaintiffs are now required to expend additional funds, time, and emotional happiness to go through the IVF process once again.

92.    These negligent acts and/or omissions were a substantial factor in causing Plaintiffs' harm and damages.

93.    Defendants could have reasonably foreseen that if Defendants' embryo culture media was defective, consumers of the embryo culture media, like Plaintiffs, would have experienced extreme emotional distress as a result of Defendants' breach of their duty of care.

94.    It is also foreseeable to Defendants that Defendants' breach would cause such damages as discussed above given that an unsafe and defective embryo culture media would cause developing embryos to stall in development and lose viability. Defendants knew or should have known that embryo culture media is an extremely critical element in the viability of developing embryos.

95.    Defendants' acts and omissions constitute gross negligence because they are an extreme departure from what a reasonably careful person would do in the same situation to prevent foreseeable loss of embryos during the IVF process.

96.    Defendants acted willfully, wantonly, and with a conscious disregard for the safety of consumers and/or users of their embryo culture media, including Plaintiffs, because, without limitation, Defendants were aware of the dangerous consequences of not properly or adequately

testing their embryo culture media (including specifically the Recalled Embryo Culture Media Lots), they knew or should have known the embryo culture media (specifically, the Recalled Embryo Culture Media Lots) lacked vital nutrients such that it posted a severe risk to irreplaceable developing human embryos, and failed to recall the Recalled Embryo Culture Media Lots before the embryo culture media was used to culture and develop Plaintiffs' embryos.

97.    Defendants' failure to manufacture and ensure the safety of their embryo culture media (including the Recalled Embryo Culture Media Lots) to developing embryos has caused severe emotional distress and economic harm to Plaintiffs. As a result of Defendants' breach of duty, Plaintiffs have been forced to repeat the IVF process and suffer the loss of potential children.

98.    Coping with this loss, as well as general infertility and IVF, is often extremely difficult and requires counselling.

99.    As a result of this breach on part of Defendants, Plaintiffs suffered damages to be determined at trial, including their lost developing embryos, emotional distress, time, money, and other inconveniences suffered throughout the repetition of the IVF process. A reasonable person would struggle to cope with the losses suffered by Plaintiffs.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT FAILURE TO RECALL**

100.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

101.    At all times relevant herein, Defendants manufactured, distributed, and/or sold embryo culture media for use with human embryos, including the Recalled Embryo Culture Media Lots.

102.    As manufacturers of embryo culture media for use with human embryos, Defendants owed a duty, including but not limited to Plaintiffs, to design, manufacture, inspect, and/or test their embryo culture media, including the Recalled Embryo Culture Media Lots, such that their embryo culture media was properly formulated to develop human embryos and/or contained ingredients essential for embryonic development. Further, these Defendants had an ongoing duty following the manufacture, distribution, and/or sale of their embryo culture media, including the Recalled Embryo

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Culture Media Lots, to inform purchasers, consumers, and/or others who used their embryo culture media that the embryo culture media was defective and/or lacked essential nutrients critical to developing human embryos, and to immediately recall and/or remove such embryo culture media from the market to prevent harm.

103.   Defendants breached these duties and acted negligently by failing to recall their Recalled Embryo Culture Media Lots earlier, including before such embryo culture media came into contact with Plaintiffs' developing embryos.

104.   For a significant period of time before they issued the recall of its Recalled Embryo Culture Media Lots, Defendants knew and/or should have known that, when used as intended, their Recalled Embryo Culture Media Lots were not properly or adequately tested for, among other things, proper formulation—such as the inclusion of magnesium, and posed an unreasonable increased risk of contamination to developing embryos.

105.   Defendants knew, and/or reasonably should have known that the Recalled Embryo Culture Media Lots, posed a substantial risk of serious injury to the developing embryos with which the embryo culture media came into contact and/or was used to culture and develop human embryos.

106.   Defendants knew and/or reasonably should have known that they had failed to properly or adequately test their Recalled Embryo Culture Media Lots before distributing and/or selling and/or causing such embryo culture media to enter the market.

107.   A reasonable manufacturer, distributor, and/or seller in the same or similar circumstances would have recalled the embryo culture media and issued a notice to purchasers, consumers, and/or users—prior to the embryo culture media coming into contact with Plaintiffs' developing embryos—rather than continuing to allow the embryo culture media to be used, sold, distributed, and/or manufactured, thereby obfuscating the true risks of the embryo culture media to developing human embryos.

108.   Despite the fact that they knew or should have known that the Recalled Embryo Culture Media Lots were defective, lacked essential nutrients to embryonic development, and posed an unacceptable risk to developing embryos, Defendants failed to recall the embryo culture media.

109.   Defendants acted with a conscious disregard for the safety of consumers and/or users

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

of their embryo culture media, including Plaintiffs, because, without limitation, Defendants were aware of the dangerous consequences of not properly or adequately testing their embryo culture media (including specifically the Recalled Embryo Culture Media Lots), they knew or should have known the embryo culture media (specifically, the Recalled Embryo Culture Media Lots) lacked vital nutrients such that it posted a severe risk to irreplaceable developing human embryos, and failed to recall the Recalled Embryo Culture Media Lots before the embryo culture media was used to culture and develop Plaintiffs' embryos.

## SIXTH CAUSE OF ACTION

## UNJUST ENRICHMENT

110.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained in all other paragraphs in this Complaint as though fully set forth in this cause of action.

111.    Plaintiffs conferred benefits on Defendants in the form of monies paid to purchase Defendants' worthless and defective embryo culture media, i.e., the Recalled Embryo Culture Media Lots. These monies were not gifts or donations but were given in exchange for the Recalled Embryo Culture Media Lots.

112.    Defendants voluntarily accepted and retained these monetary benefits mentioned above.

113.    Because this benefit was obtained unlawfully, namely because of Defendants' marketing and sale of embryo culture media (including the Recalled Embryo Culture Media Lots) unfit for their intended use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

114.    Defendants received benefits in the form of revenues from purchases of their embryo culture media (including the Recalled Embryo Culture Media Lots) to the detriment of Plaintiffs, because Plaintiffs purchased mislabeled and defective embryo culture media (including the Recalled Embryo Culture Media Lots) that were not what Plaintiffs bargained for and were not safe and effective, as claimed by Defendants.

115.    Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Recalled Embryo Culture Media Lots by Plaintiffs. Retention of those monies

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

under these circumstances is unjust and inequitable because Defendants' representations and labeling of the Recalled Embryo Culture Media Lots was misleading to consumers, which caused injuries to Plaintiffs because they would have not purchased the Recalled Embryo Culture Media Lots had they known the true facts and nature of the Recalled Embryo Culture Media Lots.

116. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs is unjust and inequitable, Defendants must pay restitution to Plaintiffs for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1) For past, present, and future non-economic damages in an amount to be determined at the time of trial;

2) For past, present, and future economic damages in an amount to be determined at the time of trial;

3) For compensatory, restitutionary, rescissory, general, consequential, punitive and/or exemplary damages, in an amount to be determined at trial;

4) For costs of suit herein;

5) For pre- and post-judgement interest as allowed by law;

6) For injunctive relief, in order to ensure that Plaintiffs' biological material does not come into contact with any more defective embryo culture media manufactured by Defendants; and

7) For such other and further relief as the Court may deem just and proper.

DATED: February 2, 2024                    **CLARKSON LAW FIRM, P.C.**

Tracey B. Cowan (SBN 250053)
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050Tel.: (213) 788-4050
Fax: (213) 788-4070

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

19
COMPLAINT AND DEMAND FOR JURY TRIAL

Ryan J. Clarkson (SBN 257074)
**CLARKSON LAW FIRM, P.C.**
rclarkson@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

Shireen M. Clarkson (SBN 237882)
**CLARKSON LAW FIRM, P.C.**
sclarkson@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

Olivia E. Davis (SBN 353041)
**CLARKSON LAW FIRM, P.C.**
odavis@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: February 2, 2024                    **CLARKSON LAW FIRM, P.C.**

Tracey B. Cowan (SBN 250053)
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050Tel.: (213) 788-4050
Fax: (213) 788-4070

Ryan J. Clarkson (SBN 257074)
**CLARKSON LAW FIRM, P.C.**
rclarkson@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

Shireen M. Clarkson (SBN 237882)
**CLARKSON LAW FIRM, P.C.**
sclarkson@clarksonlawfirm.com

22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

Olivia E. Davis (SBN 353041)
**CLARKSON LAW FIRM, P.C.**
odavis@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*